IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RUTH MEDRANO LOPEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-0283-D |
| VS. | § | |
| | § | |
| SONIC COMPONENTS, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Ruth Medrano Lopez ("Lopez") alleging retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Tex. Labor Code Ann. § 451.001 (West 2015), defendant Sonic Components, LLC ("Sonic") moves for summary judgment. Concluding that Lopez has met her summary judgment burden on her Title VII claim, but not on her Texas Labor Code claim or certain of her claims for damages, the court grants Sonic's motion in part and denies it in part.

I

Sonic hired Lopez in November 2012 to work as a general laborer, or "assembler," at its facility in Corsicana, Texas.[1]  Lopez's immediate supervisor was defendant Oswaldo Rios a/k/a Alejandro "Alex" Rangel ("Rangel").  Francisco Salgado ("Salgado") was the

---

[1]In deciding this motion, the court views the evidence in the light most favorable to Lopez as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Plant Manger at the Corsicana facility, and Manuel Gonzales ("Gonzales") was the Assistant Plant Manager.

Lopez alleges that, beginning in December 2012, Rangel began propositioning her in an unwelcome sexual manner. He pressured her for dates, made comments about her body, and, under the guise of "training" her, invaded her personal space and touched her. Lopez contends that she twice reported Rangel's behavior to Gonzales, who disregarded her concerns and told her that if she really needed her job, she should "shut up about Rangel." P. Br. 3. On January 24, 2013 Lopez reported Rangel's behavior to Salgado, who counseled Rangel the following day. Rangel's inappropriate behavior stopped as a result.

In February 2013 Lopez asked to be reassigned to work in the Production Department, where employees were paid both an hourly rate and a "piece rate." Compensation at the "piece rate" allowed employees to make more money based on the number of box spring mattresses they assembled. Gonzales worked with Lopez to arrange the move.

Lopez contends that she experienced retaliation in her new position. Unlike other employees in the Production Department, who had bundles of mattress coils delivered very near their work stations by forklift and stacked within reach, Lopez was required to walk to another area where bundles were stacked on a pallet, retrieve them, and carry them back to her assigned assembly machine. Lopez contends that Rangel and Gonzales instructed the male employees "not to help that lady," and that the men were instructed not to bring fabric to her but to require her to lift and carry her own fabric and other materials. *Id.* at 5. In addition, Lopez was assigned to a machine that was known to be the most difficult to operate,

- 2 -

generally required two people to operate it (although Lopez was expected to operate it alone), and, on most occasions, was not operational when she began her shift. Lopez believed that someone, likely Rangel, was tampering with her machine. Lopez maintains that the impaired production resulting from the machine to which she was assigned virtually eliminated her ability to make more money in the Production Department (since she was being paid by the piece), and that she was frequently counseled for poor production speed and was threatened with disciplinary action.

On February 19, 2013 Lopez complained to Salgado about what she believed was retaliation against her for her prior complaints regarding Rangel. Later that day, Lopez was injured when she fell and a bundle of coils landed on top of her. Gonzales reported Lopez's injury to Salgado, who authorized a local clinic to evaluate Lopez. She completed her shift and went to the clinic the following day. Her treating physician prescribed physical therapy and released her to return to work on light duty.

On February 21, 2013 Lopez returned to work and presented her limited-duty work release to Gonzales. Gonzales assigned her to cleaning jobs but, after three hours, abruptly sent her home, stating that there was no more work at the plant for her and that she should come back when she was well. The following day, Lopez reported for duty at her usual time, but Gonzales ordered her to leave and not return. Lopez contends she believed Gonzales was firing her.

Sonic provides workers' compensation insurance to employees through CNA Insurance ("CNA"). After Lopez filed her injury report, CNA began its investigation of her

workers' compensation claim.  On March 4, 2013, during the course of CNA's interview with Lopez, CNA informed Lopez that Sonic had light duty work available for her, that she needed to return to work, and that she should expect a letter in the mail regarding the light duty work.

On March 6, 2013 Lopez received a certified letter ("Offer Letter") from Sonic's HR Manager Chelsea Covington ("Covington"), stating that she was being offered a light duty position and that Salgado would be her supervisor.  The Offer Letter also stated: "Please contact us as soon as possible to arrange your work schedule.  Failure to respond will indicate your refusal of this bona fide offer of employment." P. App. 174.  Lopez signed the Offer Letter on the line that stated, "I ACCEPT this offer," dated it March 6, 2013, and mailed her acceptance on March 7, 2013 via certified mail, return receipt requested.  *Id.*

That same day, Lopez went to the Corsicana plant, intending to arrange her schedule as the letter directed.  On her way into the building, however, Lopez encountered Gonzales, who demanded to know why she was there.  Lopez informed him that she had received a letter stating that she had been offered a light duty position, but Gonzales told her that he knew nothing about the Offer Letter or any light duty position, that she was not allowed on the premises, and that she should leave.  Based on Gonzales's statements, Lopez believed she had been fired.

On March 11, 2013 Sonic received Lopez's written acceptance of the light duty job. No one from Sonic, however, responded to Lopez's written acceptance or called or wrote to her to confirm that she wanted the job, to arrange a work schedule, or to ask why she was not

- 4 -

at work.  Lopez contends that Sonic's total silence in response to her acceptance of the light

duty job offer firmly convinced her that she had been fired on March 7, the day when

Gonzales asked her to leave Sonic's premises.

CNA continued to investigate Lopez's workers' compensation claim.  During a March

11, 2013 interview, Salgado informed CNA that he believed Lopez had faked her injury and

that "she was going around no matter what happened after the incident with [Rangel], that

somehow she was going to try to get something out of the company one way or the other."

P. Br. 10 (quoting P. App. 217).

In March or April 2013 Lopez filed a charge of discrimination with the Equal

Employment Opportunity Commission, and, after receiving her right-to-sue letter, she filed

this lawsuit against Sonic and Rangel.  In her second amended complaint, Lopez asserts

claims against Sonic for retaliation, in violation of Title VII, and in violation of Tex. Labor

Code Ann. § 451.001.[2]  Sonic moves for summary judgment on her claims.  Lopez opposes

the motion.

## II

Because Lopez will bear the burden of proof at trial on her claims, Sonic can meet

its summary judgment obligation by pointing to the absence of admissible evidence to

support the claim in question.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once

Sonic does so, Lopez must go beyond her pleadings and designate specific facts showing that

---

[2]Lopez also asserts claims against Rangel for retaliation, assault and battery, and
intentional infliction of emotional distress.  These claims remain for trial.

there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that

a reasonable jury could return a verdict in Lopez's favor. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). Lopez's failure to produce proof as to any essential element

of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512

F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). Summary judgment

is mandatory if Lopez fails to meet this burden. *See Little*, 37 F.3d at 1076.

## III

The court begins with Lopez's Title VII retaliation claim.

## A

Title VII prohibits employers from retaliating against employees who engage in a

protected activity. 42 U.S.C. § 2000e-3(a).[3] Because Lopez relies on circumstantial

evidence to support her retaliation claim, she must proceed under the familiar *McDonnell*

*Douglas*[4] burden shifting framework. *See, e.g., Royal v. CCC & R Tres Arboles, L.L.C.*, 736

F.3d 396, 400 (5th Cir. 2013) ("A retaliation claim that is premised on a pretextual rationale

---

[3]42 U.S.C. § 2000e-3(a) provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

[4]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

for dismissal is analyzed under the *McDonnell Douglas* framework.").

Lopez must first demonstrate a prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).  As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but-for" causation that a jury must find.  *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing this prima facie case burden as "minimal").

If Lopez establishes a prima facie case, the burden shifts to Sonic to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action taken.  *See Walker*, 2005 WL 2278080, at *9.  This burden is one of production, not of proof.  *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If Sonic meets its production burden, the burden shifts back to Lopez to produce evidence that would enable a reasonable jury to find that retaliation for Lopez's protected conduct, rather than Sonic's proffered legitimate, nonretaliatory reason, was the "but-for cause" of the adverse employment action.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*,___

- 7 -

U.S.___, 133 S.Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also, e.g., Coleman v. Jason Pharms.*, 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." (citing *Nassar*, 133 S.Ct. at 2533-34)). "In order to avoid summary judgment, [Lopez] must show 'a conflict in substantial evidence' on the question of whether [Sonic] would not have taken the action 'but for' the protected activity." *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

B

The court begins with Lopez's prima facie case. Sonic contends that it is entitled to summary judgment on Lopez's Title VII retaliation claim because Lopez has failed to establish that she suffered an adverse employment action.[5]

1

"The antiretaliation provision [of Title VII] seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). To constitute prohibited retaliation, an employment action must be "materially adverse," meaning an action that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations and internal quotation marks omitted). "The purpose of this objective standard is

---

[5]For purposes of its summary judgment motion only, Sonic does not contest the other two elements of Lopez's prima facie case. D. Br. 11.

'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington N.*, 548 U.S. at 68). Although "arguably adverse employment actions must be viewed in context," *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007), "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience," *Burlington N.*, 548 U.S. at 68. In other words, "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

2

Sonic argues that neither of the two adverse actions on which Lopez relies—her transfer to a production machine and her resulting work there and the cessation of her employment—qualifies as an "adverse employment action" in the retaliation context. Regarding the first action (Lopez's transfer to a production position and the surrounding circumstances), Sonic contends that nothing about this transfer would dissuade a reasonable worker from engaging in protected activity. Lopez requested the transfer and accepted it because she believed the new position would benefit her; she testified that she found the position was easy and she was successful in it; she testified that Sonic's machines, in general, had mechanical problems, and that her specific machine suffered from mechanical problems before she worked on it; she testified that workers on other shifts were assigned to her

machine and also complained about its mechanical functions; and Lopez testified that she

continued to work at Sonic and actually received a pay raise after reporting Rangel's

activities.   Regarding the second action (the cessation of Lopez's employment), Sonic

contends that it offered Lopez a position that complied with her restrictions and did not result

in a loss of time or pay, and that Lopez's employment was not terminated; instead, she

resigned by failing to contact Sonic to arrange her schedule as instructed in the Offer Letter.

Accordingly, it maintains that Lopez's resignation of employment did not constitute an

adverse employment action.

Lopez responds that she suffered the following adverse employment actions as a result

of her complaints:

> (1) she became the subject of actual sabotage in the workplace;
> (2) she was given a machine that usually had two operators, but
> she was supposed to operate it alone; (3) the men in the
> workplace were threatened not to help her; (4) her materials,
> weighing approximately 50 pounds were intentionally placed
> out of her reach, further reducing her production.

P. Br. 14.   In its reply, Sonic does not address whether the adverse actions on which Lopez

relies in her response constitute "adverse employment actions" for purposes of her Title VII

retaliation claim.

3

The court concludes that Lopez has met her summary judgment burden with respect

to the second element of her prima facie case.   In moving for summary judgment, Sonic

contends that neither Lopez's transfer to a production machine and her work there nor the

cessation of Lopez's employment[6] constitutes an "adverse employment action." In response, Lopez points to four specific actions—the "sabotage" of her machine, her assignment to a machine that is usually operated by two people, the instructions to the men in the workplace not to help her, and the location of her materials far from her machine—that she maintains constitute an "adverse employment action" for purposes of her Title VII claim. Sonic does not contend, either in its brief or in its reply, that any of *these four actions* does not constitute an "adverse employment action."[7] In other words, Sonic does not contend that the actions on which Lopez relies in support of the second element of her prima facie claim are not

---

[6]Lopez does not rely on the cessation of her employment as an adverse employment action in support of her Title VII claim. She pleads this conduct only in support of her workers' compensation retaliation claim. *See* Am. Compl. ¶¶ 49, 52-54. And in her response brief, she does not argue that the cessation of her employment constituted an adverse employment action for purposes of her Title VII retaliation claim. *See* P. Br. 14-15. Moreover, even if Lopez *did* intend to rely on her alleged "termination" as an adverse employment action in support of her prima facie case for Title VII retaliation, Lopez would be unable to establish that retaliation for her complaints about Rangel was the "but for" cause of her termination, *see Nassar*, 133 S.Ct. at 2528; *Coleman*, 540 Fed. Appx. at 304, because she specifically pleads (and argues in her response brief) that she was terminated in retaliation for making a claim of injury covered by workers' compensation insurance. *See* Am. Compl. ¶ 54 ("Plaintiff would show that Plaintiff's seeking Worker's Compensation insurance benefits, and her pursuit of remedies within the Workers Compensation system, were motivating factors in the retaliatory actions taken against her. *Plaintiff would show that but for her engagement in these protected activities, she would not have been terminated.*" (emphasis added)); P. Br. 16 ("[Lopez] has shown that 'but for' her on-the-job injury, she would not have been terminated.").

[7]Although it points to evidence that Sonic's machines, in general, had mechanical problems, that Lopez's specific machine suffered from mechanical problems before she worked on it, and that workers on other shifts were also assigned to the machine and complained about its mechanical function, Sonic does not explain why the four adverse actions on which Lopez relies would not dissuade a reasonable worker from making or supporting a charge of discrimination. *See Burlington N.*, 548 U.S. at 68.

- 11 -

actions that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N.*, 548 U.S. at 68.

C

For similar reasons, the court concludes that Sonic is not entitled to summary judgment on the question whether Sonic's actions were pretextual.

1

Under the *McDonnell Douglas* burden-shifting framework, once Sonic has produced evidence of a legitimate, nonretaliatory reason for the adverse employment action, Lopez must prove "by a preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation." *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam) (quoting *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 584 (5th Cir. 2006)) (internal quotation marks omitted). A plaintiff can demonstrate pretext "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation and internal quotation marks omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

2

Sonic contends that Lopez cannot show a " 'conflict in substantial evidence' on either her transfer or the cessation of her employment," D. Br. 15, and it maintains that it is entitled to summary judgment because "neither the transfer nor her resignation were the result of

[Lopez's] complaints about Rangel," *id.* at 16.   But Lopez does not base her Title VII retaliation claim on either her transfer or the cessation of her employment.   Rather, as explained above, she contends that she was subjected to retaliation when

> (1) she became the subject of actual sabotage in the workplace; (2) she was given a machine that usually had two operators, but she was supposed to operate it alone; (3) the men in the workplace were threatened not to help her; (4) her materials, weighing approximately 50 pounds were intentionally placed out of her reach, further reducing her production.

P. Br. 14.   Not only has Sonic failed to articulate a legitimate, nonretaliatory reason for *these* alleged retaliatory actions, it does not move for summary judgment on the ground that Lopez has failed to present evidence that Sonic's proffered explanation for *these* actions—i.e., the actions on which Lopez bases her Title VII retaliation claim—were pretextual.   Accordingly, the court holds that Sonic is not entitled to summary judgment on Lopez's Title VII retaliation claim, and it denies Sonic's motion in this respect.[8]

## IV

Sonic also moves for summary judgment on Lopez's claim for retaliation in violation of Tex. Labor Code Ann. § 451.001.

## A

Section 451.001 of the Texas Labor Code provides that an employer "may not discharge or in any other manner discriminate against an employee because the employee has

---

[8]In reaching its decision today, the court does not suggest that Sonic will be unable to prevail at trial on Lopez's Title VII retaliation claim.

- 13 -

. . . filed a workers' compensation claim in good faith[.]" Tex. Lab. Code Ann. § 451.001.

Texas employs a burden-shifting analysis for workers' compensation retaliatory discharge

claims under section 451.001. *See Eldridge v. Am. Residential Servs. L.L.C.*, 2006 WL

2035654, at *9 (N.D. Tex. July 19, 2006) (Fitzwater, J.) (citation omitted); *see also Phillips*

*v. SACHEM, Inc.*, 2014 WL 7464035, at *2 (Tex. App. Dec. 31, 2014, no pet.) (mem. op.).

Initially, Lopez has the burden of establishing a causal link between her participation in the

protected activity, e.g., filing a workers' compensation claim, and Sonic's alleged retaliatory

action, i.e., terminating her employment. *See Eldridge*, 2006 WL 2035654, at *9. The causal

connection may be shown by evidence of (1) knowledge of the compensation claim by those

making the decision on termination, (2) expression of a negative attitude toward the

employee's injured condition, (3) failure to adhere to established company policies, (4)

discriminatory treatment in comparison to similarly situated employees, and (5) evidence that

the stated reason for the discharge was false. *Cont'l Coffee Prods. Co. v. Cazarez*, 937

S.W.2d 444, 451 (Tex. 1996). Lopez need not show that she was discharged solely because

she filed a workers' compensation claim, but she must demonstrate that filing the claim was

at least a determining factor in her discharge. *See Eldridge*, 2006 WL 2035654, at *9.

　　　Once Lopez establishes the requisite causal link, Sonic has the burden of rebutting the

alleged discrimination by showing that it had a legitimate reason for terminating Lopez's

employment. *See id.* at *10 (citing *Anderson v. Corrugated Servs., Inc.*, 2001 WL 585760,

at *2 (N.D. Tex. May 24, 2001) (Fitzwater, J.)). If Sonic meets this obligation, then to

survive summary judgment, Lopez must produce controverting evidence of Sonic's

retaliatory motive. *See id.* She must demonstrate that she would not have been discharged but for her assertion of a workers' compensation claim. *See id.*; *see also Phillips*, 2014 WL 7464035, at \*3 ("Finally, if the employer demonstrates a legitimate, nondiscriminatory reason, then the burden shifts back to the employee either to present evidence raising a fact issue on whether the reason for termination was a pretext for the discrimination or to challenge the employer's summary-judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason." (citations omitted)).

B

The court begins with Sonic's argument that Lopez cannot establish a causal link between the alleged adverse action and the filing of her workers' compensation claim because she has failed to establish *any* of the factors set forth by the Supreme Court of Texas in *Continental Coffee*, 937 S.W.2d at 451.

In her response, Lopez does not address the *Continental Coffee* factors. Instead, she contends that she has established a *prima facie* case of workers' compensation retaliation because:

> It is plain from the evidence that Salgado had a negative attitude toward [Lopez]'s injured condition, and repeatedly expressed that view, in writing, and in a recorded statement. Gonzales' first firing of [Lopez] took place only days after her injury, and the second was merely two weeks later. The facts demonstrate that [Lopez] had every reason to believe she was fired, and it all points to her injury. [Lopez] was terminated by a person who had the authority to do so, who in fact did so twice, both before and after the bona fide offer of employment.

P. Br. 17. Texas courts have held that "[t]he five *Continental Coffee* factors are not elements

- 15 -

of the cause of action, nor are they an exhaustive list of the types of circumstantial evidence that could establish a causal connection." *Glass v. Amber, Inc.*, 2002 WL 31430097, at *5 (Tex. App. Oct. 31, 2002, pet. denied) (unpublished opinion); *see also Bergen v. Cont'l Cas. Co.*, 368 F.Supp.2d 567, 580 n.14 (N.D. Tex. 2005) (Sanders, J.) ("Plaintiff need not present evidence on every [*Continental Coffee*] factor." (citing *Cont'l Coffee*, 937 S.W.2d at 451)).

Because Lopez is not required to present evidence on every *Continental Coffee* factor to make the *prima facie* inference, and because she has adduced evidence that she was terminated within weeks of her injury and that Salgado stated during a March 11, 2013 interview with CNA that he did not believe Lopez's injury was a "legitimate incident," P. App. 216, the court assumes without deciding that a causal connection exists. The court next turns to Sonic's proffered reason for Lopez's discharge and Lopez's summary judgment evidence of a retaliatory motive.

C

Sonic contends that it did not terminate Lopez's employment[9]; that the Offer Letter gave clear instructions that Lopez was to contact Covington "to arrange [her] work schedule," and that "[f]ailure to respond will indicate [her] refusal of this bona fide letter of employment," D. App. 179; that it is undisputed that Lopez never contacted Covington to arrange her work schedule; and that "Sonic is entitled to rely on the terms of its letter[,] is able to believe Lopez would follow those instructions[, and] Lopez has not produced any

---

[9]*See* D. Br. 8 ("[I]t is Sonic's position that Lopez abandoned and resigned her employment[.]").

evidence that shows that Sonic's belief in that regard is retaliatory," D. Br. 18-19.

In her response, Lopez does not address Sonic's proffered legitimate reason for terminating her employment. She contends only that

> [t]he primary issue is whether [Lopez] was terminated. A person to whom she reported, who had the ability to terminate her, informed her that she no longer had a job. When she was offered the bona fide offer of employment, she accepted the position. [Lopez] clearly preferred to work for an employer that mistreated her, rather than be unemployed. She returned the letter, having signed "I ACCEPT" the light-duty position. However, Gonzales reiterated that she was fired. Another employee, Arturo Mondragon, also believed that [Lopez] was terminated. Personnel at Sonic knew how to contact [Lopez]; but chose not to.

P. Br. 16. These allegations are insufficient to raise a genuine issue of material fact on the question of pretext or Sonic's retaliatory motive. Lopez contends that she believed, based on Gonzales's actions, that she had been terminated, but she does not dispute that the Offer Letter informed her that a light duty position was available, that she was to contact Covington (not Gonzales) to arrange her work schedule, that her failure to do so would indicate her refusal of Sonic's offer of employment, and that she never contacted Covington, as instructed. In other words, Lopez offers no evidence, nor does she even argue, that Sonic's proffered legitimate reason for her termination—i.e., her failure to contact Covington to arrange her work schedule—was a pretext for workers' compensation retaliation or that Sonic had a retaliatory motive. Accordingly, because Lopez has failed to meet her burden at the third step of the burden-shifting analysis for claims brought under Tex. Labor Code Ann. § 451.001, the court grants Sonic's motion for summary judgment and dismisses this

claim.

V

Sonic moves for summary judgment on Lopez's claims for physical and mental pain and exemplary damages, contending that she has failed to support her claims for "pain and suffering" and "emotional pain" through expert testimony,[10] and that Lopez has failed to introduce evidence of malice or an intent to specifically violate Title VII, as required to sustain an exemplary damages award under Title VII.[11]  Lopez has not responded to Sonic's arguments regarding damages.  Although this failure does not permit the court to enter a "default" summary judgment on the availability of physical and mental pain damages or exemplary damages in connection with Lopez's Title VII claim, *see, e.g., Tutton v. Garland*

---

[10]Sonic cites Fifth Circuit authority holding that the district court abused its discretion in admitting medical records in support of plaintiff's contention that a due process violation caused her to suffer from transient global amnesia "with no accompanying expert explanation of their significance," noting that "[t]he fact of hospitalization in establishing pain and suffering is equivocal, at best, because no expert witness appeared to support [plaintiff's] subjective belief that her 'transient global amnesia' was caused by stress at work." *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 983 (5th Cir. 1986); *see also Williams-Boldware v. Denton Cnty., Tex.,* 2012 WL 3288740, at *9 (E.D. Tex. Aug. 10, 2012) (granting judgment in favor of defendant as to jury award for past physical pain and suffering where "no medical expert testified as to the causal connection between [plaintiff's alleged] physical symptoms and her hostile work environment."), *rev'd on other grounds*, 741 F.3d 635 (5th Cir. 2014).  The court does not hold today that in *all* Title VII retaliation cases a plaintiff must present expert testimony to prove that physical or mental pain was caused by the defendant's prohibited conduct.  But considering that Lopez may have experienced physical and mental pain for a host of reasons—not the least of which is her on-the-job injury—the court concludes that expert testimony is necessary on the question of causation.

[11]Because the court is granting Sonic's motion for summary judgment on Lopez's workers' compensation retaliation claim, it does not address Sonic's argument that Lopez has failed to support her claim for exemplary damages based on this claim.

*Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a]

summary judgment nonmovant who does not respond to the motion is relegated to [his]

unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v.*

*Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp.*

*v. Westowne Associates*, 929 F.2d 160, 165 (5th Cir. 1991)).   And

> [i]f a party fails . . . to properly address another party's assertion
> of fact as required by Rule 56(c), the court may . . . (2) consider
> the fact undisputed for purposes of the motion [and] (3) grant
> summary judgment if the motion and supporting
> materials—including the facts considered undisputed—show
> that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2) and (3).

Accordingly, because Lopez has not raised a genuine issue of material fact on her

entitlement to damages for physical or mental pain or for exemplary damages, the court

grants Sonic's motion for summary judgment and concludes that Lopez cannot recover these

damages on her remaining Title VII claim.

\*   \*   \*

For the foregoing reasons, Sonic's motion for summary judgment is granted in part

and denied in part.  The court dismisses Lopez's retaliation claim under § 451.001 of the

Texas Labor Code, and it dismisses her claim for damages for physical or mental pain and

for exemplary damages on her Title VII retaliation claim.  The court otherwise denies Sonic's

- 19 -

motion.

      **SO ORDERED**.

      October 28, 2015.


                       _____

                       SIDNEY A. FITZWATER
                       UNITED STATES DISTRICT JUDGE